**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | CIVIL ACTION NO. 13-cv-11503 |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | COMPLAINT AND |
| | ) | JURY TRIAL DEMAND |
| CHIPOTLE MEXICAN GRILL, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

**NATURE OF THE ACTION**

This is an action under Title I of the Americans with Disabilities Act of 1990 (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), as well as Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Amanda Connell ("Charging Party"), who was adversely affected by such practices.  As alleged with greater particularity below, the Equal Employment Opportunity Commission ("Commission") alleges that Chipotle Mexican Grill, Inc. ("Defendant") terminated Charging Party's employment because of her actual and/or perceived disability in violation of the ADA, as amended.

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107 (a) of the ADA, 42 U.S.C. §12117 (a), which incorporates by reference Section 706 (f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e - 5 (f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981A.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Massachusetts.

## PARTIES

3.      Plaintiff, Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, as amended by the ADAAA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Section 706 (f)(1) and (3) of Title VII, 42 U.S.C. § 2000e - 5 (f)(1) and (3).

4.      At all relevant times, Defendant was a Delaware corporation doing business in Massachusetts and continuously had at least fifteen employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 101(7) of the ADA, 42 U.S.C. §12111(7), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e - (g) and (h).

6.      At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. §12111(2).

## STATEMENT OF CLAIMS

7.      More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of the ADA by Defendant.  All conditions precedent to the institution of this lawsuit have been fulfilled.

8.      In or around March 2012, Defendant engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112, as outlined below:

a.      Charging Party has a physical impairment, cystic fibrosis, which substantially

2

limits her in the major life activity of breathing.

b.      Defendant hired Charging Party on or about December 11, 2011, to work as a

crew member in its Franklin, Massachusetts location.  During her job interview with Corey

Routh, who oversaw several of Defendant's locations, she disclosed that she had cystic fibrosis.

Routh told her that he would keep this information confidential.

c.      By March 2012, Charging Party's immediate supervisor was Jonathan Drew,

whose title was "Service Manager."  Drew was supervised by Chris Bennett, whose title was

"Apprentice."

d.      On or around March 28, 2010, Charging Party disclosed to Drew that she would

be late the next day because a nurse would be coming to her house to draw blood to check her

medication levels.  This was the first time that Charging Party disclosed to Drew any information

related to her cystic fibrosis.

e.      Treatment of cystic fibrosis often consists of prolonged antibiotic therapy

delivered through a peripherally inserted central catheter ("PICC line") – the equivalent of a

permanent IV line.  On March 29, 2012, for the first time since she started working for

Defendant, Charging Party arrived at work with a shunt for the partially visible PICC line, held

in place by a visible mesh bandage, installed in her arm.

f.      Both Drew and Bennett saw a portion of Charging Party's PICC line and the mesh

bandage for it on March 29, 2012, and asked her about it.  Charging Party told Drew and Bennett

that it was for the treatment of a lung disease.

g.      Defendant terminated Charging Party the next day, March 30, 2012.

h.      On March 30, 2012, and before Defendant decided to terminate Charging Party,

Routh forwarded to the Franklin location an on-line complaint from a customer.  The customer

3

claimed that on March 11, 2012, at 7 p.m., she had been mistreated by a young female employee while ordering a burrito.

i.      Defendant claims to have identified Charging Party as the employee discussed in the customer complaint through an immediate review of its internal video system at the Franklin location.  However, its own time records show that Charging Party had clocked out at 4:23 p.m. on March 11, well before the time of the incident described in the customer's complaint.  In addition, Defendant did not interview either the customer or Charging Party as part of its investigation.

j.      Defendant nonetheless used the customer's complaint as an excuse to terminate Charging Party's employment.

k.      Defendant did not preserve the video tape it claims to have used to identify Charging Party as the subject of the customer complaint.

l.      Defendant used the customer complaint as an excuse to terminate Connell because of an actual disability and/or perceived physical impairment.

m.      Defendant's explanation for terminating Charging Party, just one day after it became aware of her need to wear a shunt for a PICC line for her cystic fibrosis, is pretextual.

9.      Defendant's termination of Charging Party's employment violated the ADA.

10.      The unlawful employment practices complained of above were intentional.

11.      The unlawful employment practices complained of above were done with malice or reckless indifference to Charging Party's federally protected rights.

12.      The effect of the practices complained of above has been to inflict emotional pain, suffering, and inconvenience upon Charging Party by depriving her of equal employment opportunities in violation of the ADA.

4

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, successors,

assigns, and all persons in active concert or participation with it, from engaging in any

employment practice which discriminates on the basis of disability.

B.      Order Defendant to institute and carry out policies, practices, and programs which

provide equal opportunities for qualified individuals with disabilities, and which provide

affirmative relief necessary to eradicate the effects of its unlawful employment practices.

C.      Order Defendant to make Charging Party whole by providing compensation for

past and future pecuniary losses resulting from the unlawful employment practices described

above, including but not limited to appropriate back pay with prejudgment interest, in amounts to

be determined at trial, and other affirmative relief necessary to eradicate the effects of its

unlawful employment practices, including but not limited to, front pay and reinstatement.

D.      Order Defendant to make Charging Party whole by providing compensation for

past and future nonpecuniary losses resulting from the unlawful employment practices described

above, including but not limited to emotional pain, suffering, inconvenience, humiliation,

embarrassment, and loss of enjoyment of life in amounts to be determined at trial.

E.      Order Defendant to pay Charging Party punitive damages for its malicious and

reckless conduct described above, in amounts to be determined at trial.

F.      Grant such further relief as the Court deems necessary and proper in the public

interest.

G.      Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: June 24, 2013

> Respectfully submitted,
> P. David Lopez
> General Counsel
>
> James L. Lee
> Deputy General Counsel
>
> Gwendolyn Y. Reams
> Associate General Counsel
>
> /s/Elizabeth Grossman_____
> Elizabeth Grossman
> Regional Attorney
> elizabeth.grossman@eeoc.gov
>
> /s/Robert D. Rose_____
> Robert D. Rose
> Supervisory Trial Attorney
> Robert.rose@eeoc.gov
>
> /s/Markus L. Penzel_____
> Markus L. Penzel
> Senior Trial Attorney
> EQUAL EMPLOYMENT OPPORTUNITY
> COMMISSION
> Boston Area Office
> John F. Kennedy Federal Building
> Room 475
> Boston, MA 02203-0506
> (617) 565-3193
> markus.penzel@eeoc.gov